John O. MAY *v.* Dell EDWARDS et al

75-165                                   529 S.W. 2d 647

Opinion delivered November 17, 1975
[Rehearing denied December 15, 1975.]

Appellant, *Pro Se*.

No brief filed for appellee.

JOHN A. FOGLEMAN, Justice. This appeal questions the propriety of the judgment of the circuit court sustaining the demurrer of appellees to appellant's complaint alleging that he was entitled to the office of alderman of the second ward of North Little Rock and that appellee Edwards was usurping that office. Appellant May also sought to recover from the City of North Little Rock his legal fees incurred in seeking to establish his right to the office. The court, upon sustaining the demurrer, dismissed the complaint. We affirm as to the City of North Little Rock but reverse as to Dell Edwards.

In arriving at our conclusion, we must, in this usurpation action, as in any other, construe the complaint in favor of the pleader. *Neal* v. *Packer*, 200 Ark. 10, 139 S.W. 2d 41. See

874

also, *Faulkner v. Woodard*, 203 Ark. 254, 156 S.W. 2d 243. The plaintiff alleged in his complaint, filed in November, 1974, that: he was duly elected second ward alderman for a four-year term ending December 31, 1974; that he was convicted of inducing an abortion and sentenced on May 23, 1972, but the conviction was reversed and, upon remand, the charge was dismissed on motion of the state on May 30, 1974; on June 12, 1972, the North Little Rock City Council directed the city attorney to obtain a judicial determination of May's status, but when the Council heard a legal opinion rendered by this attorney, it illegally elected Dell Edwards in the place of May, upon the basis that a vacancy in the office was created by the conviction of May; Dell Edwards is usurping the office and should be removed upon authority of Ark. Stat. Ann. § 34-2201 (Repl. 1962); Edwards should be required to pay the compensation he will receive while usurping the office to May pursuant to Ark. Stat. Ann. § 34-2208 (Repl. 1962).

These allegations must be taken as true. *Faulkner v. Woodard*, supra. Although a complaint must state facts constituting a cause of action as something more than mere conclusions, when considered on demurrer, it is sufficient if they are stated according to their legal effect, without stating the evidence of the facts alleged. *Driesbach v. Beckham,* 178 Ark. 816, 12 S.W. 2d 408.

Our statutes have been held to afford a plain, complete, and adequate remedy at law for one entitled to an office but not in possession of it. *Lucas v. Futrall,* 84 Ark. 540, 106 S.W. 667. One entitled to an office has a right to protect his incumbency or to sue an usurper to recover it. *Wood v. Miller,* 154 Ark. 318, 242 S.W. 573. See also *Jessup v. Hancock,* 238 Ark. 866, 385 S.W. 2d 24. The action may be maintained against one who is exercising the functions of an office which he cannot hold against his adversary, by reason of a superior right in the latter. *Wheat v. Smith,* 50 Ark. 266, 7 S.W. 161. For the purpose of such cases, the term usurper is used not merely to denominate one who intrudes himself into an office without color of title, for, as against one having a better right to it, one exercising a public office without an absolute right to it, is regarded as a usurper. *Wheat v. Smith,* supra. In a usurpation action a defective title is no greater protection than

no title at all, and there cannot be a de facto officer when a de jure officer already fills the office. *Neal* v. *Parker,* 200 Ark. 10, 139 S.W. 2d 41.

Unless we can say that, as a matter of law, a vacancy existed in the office when May was convicted, without regard to the fact that the conviction was not only subsequently reversed, but the charge dismissed, May has stated a cause of action against Edwards. *Neal* v. *Parker,* supra. In this connection, it appears that the trial court may have accepted the argument of appellees, advanced in a memorandum brief accompanying their demurrer, that the matter was res judicata. We cannot sustain the court's action on this basis. Res judicata is an affirmative defense, which ordinarily must be raised by answer. *Hurst* v. *Hurst,* 255 Ark. 936, 504 S.W. 2d 360. It cannot be raised by motion to dismiss. *Southern Farmers Assn., Inc.* v. *Wyatt,* 234 Ark. 649, 353 S.W. 2d 531. Since it is an affirmative defense, it cannot be raised by demurrer unless the essential facts appear upon the face of the complaint. In this case they do not. No mention is made in the complaint of any previous litigation between the parties, and courts cannot take judicial notice of prior litigation in other cases even between the same parties. *Lewis* v. *Lewis,* 255 Ark. 583, 502 S.W. 2d 505; *Hurst* v. *Hurst,* supra. Furthermore, in order for the doctrine of res judicata to apply, it must appear that the particular matter involved was raised and determined or that it was necessarily within the issue and might have been litigated in the previous action. *Hurst* v. *Hurst,* supra; *Fisher* v. *Fisher,* 237 Ark. 321, 372 S.W. 2d 612; *Arkansas State Highway Commission* v. *Staples,* 239 Ark. 290, 389 S.W. 2d 432. None of these requisites appears on the face of the complaint.

This case is unlike *May* v. *Edwards,* 255 Ark. 1041, 505 S.W. 2d 13, where the plea of res judicata was sustained. There the parties stipulated that the same issues had been involved in a previous suit between the same parties, but we held that the issue of Edwards' tenure and May's reinstatement had not been involved in the first case. The only contention made in *May* v. *Edwards,* supra, was that Edwards' tenure ended when May's conviction was reversed. Applying res judicata, we held that it was not, based upon the assumption that a vacancy existed, as had been previously determined, but neither judgment has been pleaded in this case.

Thus, in considering *May* v. *Edwards,* supra, on this appeal, we can accord it only precedential value, just as if the parties had been Jones on the one hand and Smith on the other. We did not decide whether there was a vacancy, because the plea of res judicata as to that question was sustained. So we are now faced with the question whether a conviction, which was not final, automatically created a vacancy in the office, or, if not, whether the city council had the power to declare it vacant on that account.

Art. 5 § 9 of the Constitution of Arkansas provides that no person convicted of infamous crime shall be capable of holding any office of trust or profit in this state. As pointed out in *May* v. *Edwards,* supra, no enabling legislation has ever been passed and it was there unnecessary to decide whether this provision is self-executing. We did, however, recognize that it is the fact of conviction that disqualifies one from holding public office, under the authority of *Ridgeway* v. *Catlett,* 238 Ark. 323, 379 S.W. 2d 277. This disqualification, under *Ridgeway,* cannot even be removed by pardon. See also, *State* v. *Irby,* 190 Ark. 786, 81 S.W. 2d 419. We have not held the provision to apply automatically, without enabling legislation, except as a *disqualification* to taking office after election following both conviction and pardon. See *State* v. *Irby,* supra. We did, in *May* v. *Edwards,* hold that a reversal of a conviction did not restore the right of the person convicted to the office, assuming that there was a vacancy because of the conviction. In this case, the charge has been dismissed, and the presumption of May's innocence is unimpaired.

The reason one who has been convicted of an infamous crime is prevented from taking office is because he is thereby rendered ineligible just as he would be if he did not possess other qualifications required by law. *State* v. *Irby,* supra. It is quite a different matter to consider the effect of ineligibility upon an incumbent. We have said that an office does not ipso facto become vacant when a condition of ineligibility of the incumbent arises after he takes office, if he was eligible when he took office, and the subsequent ineligibility merely affords grounds for removal. *Stafford* v. *Cook,* 159 Ark. 438, 252 S.W. 597. We recognized in *May* v. *Edwards,* supra, that there were countervailing equities but that conflicting considerations

should be resolved in the public interest. This would not require that one absolved of guilt be forever deprived of any benefits of the office to which he was elected by the sovereign people. But May could not be restored to office in this action, because the term to which he had been elected has expired. The only possible result of this suit, insofar as Edwards is concerned, would be recovery of compensation paid for some part of the term to which May was elected. Still, the constitutional section, insofar as an incumbent is concerned, is penal in nature. See *Summerour* v. *Cartrett*, 220 Ga. 31, 136 S.E. 2d 724 (1964). There is no applicable act providing for suspension or removal of one charged with an infamous crime such as was applied in *Gray* v. *Independence County*, 166 Ark. 502, 266 S.W. 465 and *Winfrey* v. *State*, 133 Ark. 357, 202 S.W. 23, even though the legislature might well have adopted such an act. In the absence of legislation providing for suspension or removal or authorizing one or the other by action of some officer, agency or tribunal, this constitutional provision should not be construed to operate as an automatic ouster of an incumbent merely because he has been found guilty of an infamous crime and sentenced when that sentence is not and does not become final. The disqualification is not a part of the punishment for the crime. *State* v. *Irby*, supra. It is a collateral effect, not flowing from the offense, but resulting to the offender by reason of the constitutional provision. *Arnett* v. *Stumbo*, 287 Ky. 433, 153 S.W. 2d 889, 135 ALR 1488 (1941). We have, on previous occasions, decided what constituted conviction of a felony insofar as enforcement of collateral effects are concerned. We have consistently held that, before such effects are enforced, the judgment must not only not be subject to reversal, but it must also have been carried into effect by actual imposition of sentence. See *Owen* v. *State*, 86 Ark. 317, 111 S.W. 466; *Huddleston* v. *Craighead County*, 128 Ark. 287, 194 S.W. 17; *State Medical Board* v. *Rogers*, 190 Ark. 266, 79 S.W. 2d 83; *Tucker* v. *State*, 248 Ark. 979, 455 S.W. 2d 888; *Sutherland* v. *Arkansas Department of Insurance*, 250 Ark. 903, 467 S.W. 2d 724. There is no reason why the word "convicted" should be taken to mean something different, even if Art. 5 § 9 be taken to be self-executing, so that an incumbent must be ousted from office upon being found guilty of an infamous crime, without awaiting the final disposition of the case. A judicial definition of the word "convicted" different

from any we have previously given it should not be the basis of the highly penal effect of removal of an incumbent when the legislature has not provided either for removal or suspension before the conviction has become final. Other jurisdictions have held that the word "convicted", in the same or a similar constitutional provision, is to be given the strict legal meaning we have accorded it in the cases above cited and not its popular meaning, so that a conviction must be based upon a final judgment not subject to review. *Summerour v. Cartrett,* supra. *Commonwealth* v. *Reading,* 336 Pa. 165, 6 A. 2d 776 (1939); *People* v. *Fabian,* 192 N.Y. 443, 85 N.E. 672, 18 LRA (ns) 684 (1908). Cases based upon constitutional provisions or statutes which expressly declare that an office becomes vacant when the holder is convicted of a felony or infamous crime, such as *State* v. *Sullivan,* 66 Ariz. 348, 188 P. 2d 592; *McKannay* v. *Horton,* 151 Cal. 711, 91 P. 598; *State* v. *Jurgensen,* 135 Neb. 136, 280 N.W. 886; *re Obergfell,* 239 N.Y. 48, 145 N.E. 323; *State* v. *Vogel,* 65 N.D. 137, 256 N.W. 404; *State* v. *Levi,* 109 W. Va. 277, 153 S.E. 587; *People* v. *Enlow,* 135 Col. 249, 310 P. 2d 539; *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, 38 N.E. 2d 660; *Atty. Gen.* v. *Montgomery,* 275 Mich. 504, 267 N.W. 550 are neither controlling nor persuasive. We would have an entirely different situation if our constitutional provision so read or if we had such a statute.

This means that May has, on the face of the pleadings, stated a cause of action against Edwards. The reversal of the judgment in favor of Edwards may be a short-lived victory for May when and if the defense of res judicata is properly raised.

Little need be said about the action against the city. May seeks by it to recover only his attorney's fees in litigation he has conducted in seeking to recover his office. Generally speaking, in this state there can be no recovery of attorney's fees in the absence of statutory or contractual authorization. There are, of course, exceptions to this general rule. There is no allegation in the pleadings to bring the suit into that category in which attorney fees are sometimes considered when punitive or exemplary damages are to be awarded. See, e.g., Annot 72 ALR 2d 943, 947 (1960). There is no statute authorizing their recovery in a case of this sort. There is no

contract that the city breached, even if such damages should be recoverable in such an action (see *Fox* v. *Pinson,* 182 Ark. 936, 34 S.W. 2d 459, 74 ALR 583; Restatement of the Law, Contracts 531, § 334.) and the action is not basically one in tort, even if attorney's fees should be recoverable in an action of that nature. See Restatement of the Law, Torts, 591, § 914.

The parties have rendered us little assistance in the matter. The City of North Little Rock has considered the appeal so frivolous, it has not favored us with a brief. May, acting pro se, has not favored us with any authorities on any point. The only authorities of which we are aware that would come near to supporting recovery of attorney fees in an action for wrongful removal from office are the Massachusetts cases exemplified by *Stiles* v. *Morse,* 233 Mass. 174, 123 N.E. 615, 4 ALR 1365 (1919) and the New York decisions of which *McGraw* v. *Gresser,* 226 N.Y. 57, 123 N.E. 84 (1919) is typical. But we think the better rule is that expressed in *Burch* v. *Hardwicke,* 30 Gratt. (Va.) 24, 32 Am. Rep. 640 (1878) and *O'Neill* v. *Register,* 75 Md. 425, 23 Atl. 960 (1892), holding that there can be no recovery of damages unless the unauthorized removal was accomplished maliciously, dishonestly or for gratification of personal hostility. Certainly malice, corruption or personal hostility cannot be attributed to the municipality, or even to its officers, who allegedly acted upon the advice of the city attorney. There is a complete absence of any allegation that the city or any of its officials have acted dishonestly or out of malice or hostility. Furthermore, the cases which more nearly support appellant's position are unlike May's suit in that they are actions against the removing officials personally and not against the municipalities. In any event, the city is by statute immune from liability in an action for damages. Ark. Stat. Ann. § 12-2901 (Supp. 1973).

The judgment as to the City is affirmed, but as to Edwards, it is reversed and remanded for further proceedings.