JESSICA TUTEIN MOOLENAAR, 1 Lagoon Street, Christiansted, St. Croix, V.I. and JULIO MIRANDA, #7 Estate Profit, Christiansted, St. Croix, V.I. and JANET G. UPSON, Estate Concordia, Christiansted, St. Croix, V.I., Plaintiffs

v.

HENRITA TODMAN, Supervisor of Elections, No. 3 Crystal Gade, St. Thomas, U.S. Virgin Islands and ULLA S. MULLER, Chairman, GASTON BENJAMIN, ERIK BONDE–HENRIKSEN, HERIBERTO CAPO, ELAINE COLON, GERTRUDE DUDLEY, PIERRE ALMANDO MAGRAS, AEGIST MARSH, GERDA N. MARSH, JACOB M. MONSANTO, TERRESITA NUNEZ and GEORGE RIEHLY, Members of the Board of Elections, District of St. Thomas-St. John, No. 3 Crystal Gade, Charlotte Amalie, St. Thomas, U.S. Virgin Islands and NATHANIEL HEWITT, SR., Chairman, GRACIANO BELARDO, SAMUEL BOUGH, PHILIP C. CLARK, DENNIS CLARKE, JULIUS A. COOPER, ELISA DENNIS, BERYL FRANCIS, DOUGLAS A. GARDINE, WILFRED A. JAMES, BLANCA M. RODRIGUEZ and HEZEKIAH WALCOTT, Members of the Board of Elections, District of St. Croix, #30 King Cross Street, Christiansted, St. Croix, V.I. and REUBEN B. WHEATLEY, Commissioner of Finance, St. Thomas, U.S. Virgin Islands and PETER J. O'DEA, Attorney General of V.I., Department of Law, St. Thomas, U.S. Virgin Islands and MAGDALENE BRYAN, Director of the Budget, Government of the V.I.,

Charlotte Amalie, St. Thomas, U.S. Virgin Islands, Defendants
and
**LEGISLATURE OF THE VIRGIN ISLANDS, JOHN L. MADURO**
and A. DAVID PURITZ, Intervening Defendants

Civil No. 301–1970

District Court of the Virgin Islands
Div. of St. Croix

September 18, 1970

CHRISTIAN, *Chief Judge*

MEMORANDUM

Plaintiffs, qualified electors of the territory of the Virgin Islands, residing in the electoral District of St. Croix, have brought this class action seeking declaratory as well as injunctive relief. They have joined as defendants the Supervisor of Elections, the Commissioner of Finance, the Attorney General and Budget Director of the territorial government, and the individual members of Boards of Election for the Districts of St. Thomas-St. John and St. Croix.

Jurisdiction is allegedly grounded on the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988 and additionally under 28 U.S.C. § 1343. The declaratory relief is sought pursuant to 28 U.S.C. §§ 2201, 2202.

Plaintiffs ask that a three-judge District Court be convened, pursuant to the provisions of 28 U.S.C. § 2281, et. seq., and that a court so convened

(a) declare section 5(b) of the Revised Organic Act of the Virgin Islands, 48 U.S.C. § 1571(b) (Supp. V, 1969) and all territorial statutes enacted pursuant thereto invalid for repugnance to the "due process" clause of the Fifth and Fourteenth Amendments, and the "equal protection" clause of the Fourteenth Amendment to the United States Constitution;

(b) restrain and enjoin defendants from conducting any primary or general election until the Legislature has been legally apportioned;

(c) restrain the territorial officers—defendants from performing any of their duties in connection with any election until proper apportionment has been accomplished;

(d) decree the proper reapportionment of the Legislature of the Virgin Islands, should that body fail to do so; and

(e) retain jurisdiction of this cause until such reapportionment of the Legislature has been effected as will insure to electors in the allegedly more populous District of St. Croix the rights guaranteed them by the Constitution of the United States.

■ At the outset, I find that this Court has jurisdiction to hear and determine this cause. Title 28, U.S.C. § 2281, et seq., provides for the convening of a three-judge court when certain specified suits are filed in a district court. In Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368 (1949), the United States Supreme Court held that the predecessor of section 2281[1] did not apply to the then Territory of Hawaii. It was not only the omission of the word "territory" from the statute that led the court to this conclusion. The purpose of Congress in enacting the three-judge court statute was to show deference to the sovereign states by providing a special safeguard against unnecessary interference by the federal courts with their legislative enactments. The court noted that this purpose does not apply to a territorial government, which is a creature of Congress.[2] The court also expressed an interest in strict construction of the three-judge court statute in order to protect its docket from direct appeals.[3] Stainback clearly applies to the District Court of the Virgin Islands and prohibits it from convening a three-judge court under section 2281. To the reasons for this result stated by the Supreme Court in Stainback, I would add that the District Court of the Virgin Islands is not a "district court" within the meaning of section 2281. Section 451 of Title 28 makes clear that the terms "district court," "district

---

[1] Judicial Code § 266, 28 U.S.C. § 380 (1940) now distributed to 28 U.S.C. §§ 1253, 2101, 2281 and 2284 (1964) with changes that do not affect this case.

[2] See generally Mora v. Mejias, 206 F.2d 377, 387, 388 (1st Cir. 1953) where Chief Judge Magruder discusses the status of the Commonwealth of Puerto Rico in relationship to § 2281.

[3] See 28 U.S.C. § 1253 (1964).

court of the United States," or "judge" of such court have application only to those courts established in chapter 5 of Title 28 of the United States Code. Since the District Court of the Virgin Islands is not there included, I conclude that the provisions of chapter 155 of Title 28 of the United States Code (providing for three-judge district courts) do not apply to the Virgin Islands.

This Court convened specially on Saturday, September 5, 1970, at 4:30 p.m. to hear argument on behalf of plaintiffs for a preliminary injunction as well as the arguments of defendants in opposition thereto. At the conclusion of this hearing, the Court declined to grant the temporary relief sought, but set the matter for plenary hearing on September 11, 1970. At that hearing, the Court, on its own motion, ordered the Virgin Islands Legislature joined as a party defendant under R. 24(a) of the Federal Rules of Civil Procedure.[4] John L. Maduro and A. David Puritz were, on motion, likewise permitted to intervene as defendants. This cause having come on for final hearing, and the same having been concluded, the matter is now before the Court for its decision.

■ Counsel for plaintiffs, at oral argument, withdrew the allegation of the complaint that their constitutional rights were being abridged and denied by the provisions of section 5(b) of the Revised Organic Act of the Virgin Islands. In so doing, counsel conceded, as indeed he was compelled to, that if the Congress chose to increase the membership of the Legislature of the Virgin Islands from 11 to 15 members and to leave the apportionment of those 15 seats to the said Legislature, the Congress was well within its rights in so doing, for article IV, section 3, of the United States Constitution charges it with the duty of making ". . . all needful Rules and Regulations respect-

---

[4] See Dungan v. Sawyer, 250 F.Supp. 480, 482 (D.Nev. 1965).

ing the Territory or other Property belonging to the United States."

We deal then only with the enactments of the Legislature of the Virgin Islands which seek or purport to apportion the Legislature of the Virgin Islands pursuant to section 5(b) of the Revised Organic Act of the Virgin Islands.

The gravamen of plaintiffs' complaint is that the Legislature, as apportioned by that body, is weighted in favor of the lesser populated District of St. Thomas-St. John as against the more heavily populated District of St. Croix; that the establishment of two legislative districts and subsequent appointment of seven senators to St. Thomas-St. John and six to St. Croix was arbitrary, capricious, without reference to any logical or reasonable formula, or to population, and resulted in underrepresentation for the District of St. Croix with corresponding overrepresentation for St. Thomas-St. John. It is by this claimed discrimination that plaintiffs assert the above-mentioned violation of their rights guaranteed to them under the Constitution of the United States as extended to this territory by section 3 of the Revised Organic Act of the Virgin Islands.

Prior to amendment in 1966, section 5(b) of the Revised Organic Act of 1954[5] divided the Virgin Islands into the three legislative districts of St. Thomas, St. John and St. Croix and apportioned the eleven senators comprising the Virgin Islands' unicameral legislature as follows: 2 senators to St. Thomas, 2 senators to St. Croix, 1 senator to St. John and 6 senators elected at large. In 1966, Congress amended section 5(b)[6] to add four senators and enable the Virgin Islands Legislature to apportion itself. The three legislative districts, as well as the at large

[5] Act of July 22, 1954, ch. 558, § 5, 68 Stat. 498.
[6] Act of August 30, 1966, Pub. L. 89–548, § 1, 80 Stat. 371, amending 48 U.S.C. § 1571(b) (1964).

"district," were perpetuated, and Congress temporarily apportioned fifteen seats as follows: 5 for the District of St. Thomas, 5 for the District of St. Croix, 1 for the District of St. John and 4 at large.

In 1967, the Virgin Islands Legislature appointed a Commission on Reapportionment.[7] After a special census, public hearing, study and deliberation, the Commission submitted a preliminary "summary report" to the Virgin Islands Legislature. The summary report proposed the plan for consolidation of the Districts of St. John and St. Thomas and for reapportionment of the Legislature, which was subsequently enacted.[8] Later the Commission issued its final report which set out the statistical and legal bases for the plan in fuller detail. Briefly, the report showed that the allotment of 7 seats to the District of St. Thomas-St. John, 53.8% of the 13 seats assigned to the two legislative Districts, was based on the following population statistics for the District of St. Thomas-St. John: 53.5% of total votes cast in 1966 general election; 54.8% of the total Virgin Islands population as determined by the 1960 United States Census; 55.4% of the total population and 53.5% of United States Citizens as determined by the Commission's own 1967–68 special census.[9] At trial, plaintiffs did not persuasively challenge the accuracy of these figures, though additional statistics based on records of registered voters were offered showing that the District of St. Thomas-St. John had the following portions

---

[7] Act of February 15, 1967, No. 1850, Sess. L. 1967, p. 15–19.

[8] Act of June 26, 1968, No. 2253, Sess. L. 1968, Pt. II provides that 2 senators be elected at large, 6 senators be elected from the District of St. Croix and 7 senators be elected from the District of St. Thomas-St. John, provided one of the seven is a resident of St. John or its neighboring cays. Act of February 11, 1969, No. 2411, Sess. L. 1969, extended this Act to apply to the 1970 elections. See, 18 V.I.C., note prec. § 1.

[9] See Report of the Commission on the Reapportionment of the Legislature of the Virgin Islands, Plaintiffs' Exhibit 6, at 12.

of the Virgin Islands registered voters: 1964, 51.2%; 1966, 50.6%; 1968, 49%; 1970, (based on incomplete figures), 51.6%.[10] The use of these various measures of population raises questions yet to be fully resolved by the United States Supreme Court.[11] Whether an apportionment that falls within a range of figures calculated from different population bases will satisfy the constitutional dictum that "as nearly as is practicable one man's vote . . . is to be worth as much as another's"[12] is yet to be decided. However, under no reasonable reading of the statistics before the Court, or the Legislature, would the District of St. Croix be entitled to more than equal representation with St. Thomas.[13] In view of the disposition in this case restoring the separate Districts of St. John and St. Thomas, resulting in an allocation of equal numbers of seats to the Districts of St. Thomas and St. Croix, the Court finds it unnecessary to consider plaintiffs' objections to the Legislature's apportionment plan.

■■■■ The only power granted by Congress to the Virgin Islands Legislature with respect to its own composition is contained in section 5(b) of the Revised Organic Act of 1954.[14] This section grants only the power of "appor-

---

[10] Plaintiffs also offered preliminary and unofficial 1970 U.S. Census figures which are not considered in the decision of this aspect of the case.

[11] See Burns v. Richardson, 384 U.S. 73 (1966); Kirkpatrick v. Preisler, 394 U.S. 526, 534 (1969). However, the Supreme Court in Burns suggested, and this Court firmly agrees, that there are particular infirmities associated with the use of registered or actual voters as a basis for apportionment. Primary or sole reliance on actual voters is suspect, particularly if more reliable figures are available, and is unlikely to pass muster either in the United States Supreme Court or this Court.

[12] Wesberry v. Sanders, 376 U.S. 1, 7, 8 (1964).

[13] The separation of St. John from St. Thomas does not significantly affect the statistics. The 1960 U.S. Census showed St. John to have a population of 928, or 2.8% of the Virgin Islands population.

[14] 48 U.S.C. § 1571(b) (Supp. V, 1969). This section provides: The legislature shall be composed of fifteen members to be known as senators. The apportionment of the legislature shall be as provided by the laws of the Virgin Islands: Provided, That such apportionment shall not deny to any person in the Virgin Islands the equal protection of the law: And provided further, That every voter in any district election or at large election shall be permitted to vote for the whole number of per-

tionment" and no more. When used in connection with electoral matters, the term "apportion" means to allocate legislative or other elective seats among electoral districts, while the term "districting" is used with reference to defining the lines of those districts.[15] However, there is a second sense in which the term "apportionment" is used which includes the whole process of dividing an electorate into separate constituencies, districting as well as alloting representation to those districts.[16] Since the Virgin Islands Legislature has only those powers granted it by Congress, the question whether it had the capacity to redistrict the Districts of St. Thomas and St. John by consolidating them into a single district depends on the intent of Congress in its use of the term "apportionment." If Congress did not intend to extend the power to redistrict, then the three districts continue to exist as they were established by the original section 5(b) of the Act of July 22, 1954 and adopted by the temporary apportionment provision of amended section 5(b).

Defendants argue that the first proviso of amended section 5(b), "(t)hat such reapportionment shall not deny any person in the Virgin Islands the equal protection of the law" shows the intent of Congress to extend the power to redistrict. It is abundantly clear that the preservation of the District of St. John, which would elect one of 15 legislators with less than 1/3 that ratio of the population of the Virgin Islands, would violate the one man, one vote

sons to be elected in that district election or at large election as the case may be. Until the legislature shall provide otherwise, four members shall be elected at large, five shall be elected from the District of Saint Thomas, five from the District of Saint Croix, and one from the District of Saint John, as those Districts were constituted on July 22, 1954.

[15] See Kilgarlin v. Martin, 252 F.Supp. 404, 410 n. 1 (S.D. Tex. 1966). See generally, Reynolds v. Sims, 377 U.S. 533, 538, 578 (1964), In re Apportionment of Michigan State Legislature, 373 Mich. 250, 128 N.W.2d 722 (1964); People v. Kerner, 32 Ill.2d 539, 208 N.E.2d 561 (1965). Interestingly, these definitions are also set out in detail in Appendix H of the Report of the Commission on the Reapportionment of the Virgin Islands.

[16] See Duxbury v. Donovan, 272 Minn. 424, 138 N.W.2d 692 (1965).

principle. The number of senators having been fixed at fifteen by the Organic Act, this number cannot be altered by the Virgin Islands Legislature. Therefore, equal protection is necessarily denied Virgin Islands voters unless the Legislature is empowered to alter district lines. Since Congress intended to keep the apportionment of the Virgin Islands Legislature "as consistent as possible"[17] with the rulings of the Supreme Court in the reapportionment cases, defendants argue, Congress must have intended to grant the power to redistrict. This position is not without merit, particularly in view of subcommittee hearings suggesting that some Congressmen assumed that the Virgin Islands Legislature would have the capacity to alter district lines under the proposed amendment to section 5(b). But on the other hand, there are expressions in the subcommittee's report which as strongly suggest a contrary stance.[18]

However, it is plausible that Congress in the first proviso of section 5(b) intended a meaning for equal protection qualified by the preservation of the existing districts. Congress could have intended the apportionment of the Legislature to be "as consistent as possible" with equal protection doctrine while also intending to preserve the existing districts. Manifestly, the power resides in Congress to extend the equal protection clause, to refrain from extending it, or to extend equal protection qualified in such manner as it might deem fit and appropriate. I must revert, therefore, to the term "apportionment" to ascertain in which sense Congress used the word in section 5(b).

Since no further assistance can be derived from the language of section 5(b) itself, or from legislative history, I turn now to a consideration of other statutes in pari

---

[17] H.R. Rep. No. 1511, 89th Cong. 2d Sess. 2 (1966).
[18] See Hearings on H.R. 13277 Before the Subcommittee on Territorial and Insular Affairs of the House Committee on Interior and Insular Affairs, 89th Cong., 2d Sess. 115–120, 125, 137. But see id. 144, 147 and 148 (1966).

materia with section 5(b) where Congress used the term apportionment. Until Alaska was admitted as a state, the apportionment and districting of its legislature was governed by an act of Congress.[19] This statute provided that the Alaska legislature could establish and adjust legislative districts within four established judicial divisions. However, Congress gave to the Bureau of the Census the task of apportioning representatives among the judicial divisions. Similarly, the statute governing the composition of the legislature of the Territory of Hawaii makes separate reference to "reapportionment" and "re-district."[20]

Most persuasive, and conclusive for this Court, is the use by Congress of the terms "districting" and "apportionment" in the statute amending section 10 of the Organic Act of Guam which is set out in the margin.[21] This statute is strikingly similar to amended section 5(b) of the Virgin Islands Revised Organic Act of 1954 and was considered by Congress and enacted contemporaneously with amended section 5(b).[22]

---

[19] Act of November 13, 1942, ch. 637, § 1, 56 Stat. 1016.

[20] Act of August 1, 1956, ch. 851, § 7, 70 Stat. 907.

[21] 48 U.S.C. § 1423(b) (Supp. V, 1969). This section provides: The legislature shall be composed of not to exceed twenty-one members, to be known as senators, elected at large, or elected from legislative districts, or elected in part at large and in part from legislative districts, as the laws of Guam may direct: Provided, That any districting and any apportionment pursuant to this authorization and provided for by the laws of Guam shall not deny to any person in Guam the equal protection of the laws: And provided further, That in any elections to the legislature, every elector shall be permitted to vote for the whole number of at-large candidates to be elected, and every elector residing in a legislative district shall be permitted to vote for the whole number of candidates to be elected within that district.

[22] The relevant dates pertaining to the respective amendments of the Guam and Virgin Islands Organic Acts are: House Report (Interior and Insular Affairs Committee), Guam—May 10, 1966, Virgin Islands—May 10, 1966; Senate Report (Interior and Insular Affairs Committee), Guam—July 29, 1966, Virgin Islands—July 22, 1966; House passage, Guam—May 16, August 24, 1966, Virgin Islands—May 16, August 17, 1966; Senate passage, Guam—August 2, 1966, Virgin Islands—July 27, August 11, 1966. See U.S. Code Congressional and Administrative News, 89th Cong. 2d Sess. 2659, 2671 (1966).

 In the Guam statute, Congress clearly intends to use the term "apportionment" in its narrower sense, excluding the sense of redistricting. Otherwise, it would be surplusage to mention districting in addition to apportionment.[23] Unless circumstances indicate the contrary, there is a strong presumption that Congress used a word with consistent meaning when it is found in similar contexts in statutes enacted at the same time and on the same subject. Moreover, where Congress grants the power to "redistrict" in one statute, but omits this power from the second, the omission must be construed as intentional.[24] Therefore, this Court must attach to the term "apportionment" in section 5(b) of the Virgin Islands Organic Act the same meaning that is obviously intended in section 10 of the Guam Organic Act. Consequently, I hold that section 5(b) of the Organic Act does not empower the Virgin Islands Legislature to redistrict.

 The 1968 amendment to section 3 of the Organic Act[25] applying to the Virgin Islands, among other constitutional provisions, the Equal Protection Clause of the 14th Amendment does not change this result. This guarantee required that the Virgin Islands not "deny to any person within its territory the equal protection of the laws." But since the Legislature could not abolish the District of St. John, it had no power to accord full equal protection as articulated in the Reapportionment decisions. What it could not grant, it could not "deny" in the sense of the 14th Amendment. Nor does section 5(b),

---

[23] The terms "districting" and "apportionment" are used in conjunction three times in 48 U.S.C. § 1423(b)–(c) (Supp. V, 1969).

[24] The omission of authority to indulge in "districting" might be understandable in the light of the solemn pledge to hold the three districts inviolate, made to the Committee on Interior and Insular Affairs of both houses of Congress by the Virgin Islands Legislature in a Resolution of March 17, 1966, reproduced in toto as a part of the "History" of the new section 5(b) on p. 96 of 1 Virgin Islands Code.

[25] Act of August 23, 1968, Pub. L. 90–496, § 11, 82 Stat. 841 amending 48 U.S.C. § 1561 (1964).

109

which by denying the power to redistrict requires unequal representation, violate the 14th Amendment. The 14th Amendment of its own terms is inapplicable to acts of Congress.

 Finally, I cannot say that Congress has violated the Due Process Clause of the 5th Amendment. Although the 5th Amendment has been interpreted to include some of the conceptions of equal protection,[26] this Court declines at this time to import the reapportionment cases into the due process clause.

I conclude that the Districts of St. Thomas and St. John should remain constituted as they were under the Act of July 22, 1954; that the seat designated by the Legislature to be filled by a resident of St. John, but elected by the electors of the "District of St. Thomas-St. John," be allocated to the legislative District of St. John and shall in the general election of 1970 be elected solely by the voters of the District of St. John; and that the six seats designated for residents of St. Thomas be allocated to the legislative District of St. Thomas, and shall be elected solely by the electors of the District of St. Thomas.

Final figures of the 1970 decennial census show St. Croix to be the most populous of the three legislative districts, and indeed more so than the Districts of St. Thomas and St. John, taken together. The disparity widens severely if all non-citizens are excluded from the head count. The population difference is quite substantial even if only the non-citizens temporarily residing in the territory are eliminated. As conceded by defendants, this situation makes reapportionment prior to the 1972 election, if not mandated, highly recommended. For this reason, I deem it requisite that jurisdiction of this cause be retained by this Court.[27]

---

[26] See Bolling v. Sharpe, 347 U.S. 497 (1954); U.S. ex rel. Leguillou v. Davis, 115 F.Supp. 392, 396 (D.V.I. 1953) Rev'd on other grounds 212 F.2d 681 (3rd Cir. 1954).

[27] See, e.g., Burns v. Richardson, supra, at 97; Kirkpatrick v. Preisler, supra, at 528.

## ORDER

This matter came on to be heard on the complaint of plaintiffs, seeking review of the apportionment plan of the Virgin Islands Legislature.

Plaintiffs appeared by RONALD H. TONKIN, ESQ. Defendants appeared by the Attorney General of the Virgin Islands, PETER J. O'DEA, ESQ. Intervening defendants appeared by VERNE A. HODGE and ALFRED L. SCANLAN, ESQS., the latter appearing pro hac vice.

The Court having heard testimony adduced on behalf of plaintiffs and arguments of counsel for all parties, as well as considering memoranda and exhibits submitted on behalf of the respective parties,

AND, The Court having filed its Memorandum, setting forth the facts necessary to the determination of this cause, and the Court being fully advised,

IT IS ORDERED, that:

1. The application of plaintiffs for the convening of a three-judge district court, pursuant to the provisions of 28 U.S.C. § 2281, et seq., be and the same is hereby denied;

2. Section 5(b) of the Revised Organic Act of the Virgin Islands (P.L. 89–548, 80 Stat. § 371) is a valid enactment of the United States Congress;

3. The enactments of the Legislature of the Virgin Islands (Act No. 2253, approved June 26, 1968 and Act No. 2411, approved February 11, 1969) to the extent that they provided for the abolishment of the legislative district of St. John, and the consolidation of that district with the district of St. Thomas, be and the same are hereby declared null and void;

4. The plaintiffs' prayer for injunctive relief, respecting the general election to be held on November 3, 1970, be and the same is hereby denied;

5. The three legislative Districts of St. Thomas, St. John and St. Croix shall remain constituted as they were under the Act of July 22, 1954 (ch. 558, § 5(b), 68 Stat. 498);

6. The seat designated by the Legislature of the Virgin Islands to be filled by a resident of St. John, to be elected by the electors of the "District of St. Thomas-St. John" shall be allocated to the District of St. John and shall be elected solely by the electors of the District of St. John;

7. The six seats designated by the Legislature of the Virgin Islands, to be filled by residents of St. Thomas, to be elected by the electors of the "District of St. Thomas-St. John" shall be allocated to the District of St. Thomas and shall be elected solely by the electors of the District of St. Thomas;

8. This suit may be maintained as a class action. The class is comprised of the electors of the District of St. Croix; and

9. Jurisdiction in this cause is retained by the Court over any further proceedings herein.